## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID CHOI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> COUPANG, INC., BOM SUK KIM, GAURAV ANAND, MICHAEL PARKER, MATTHEW CHRISTENSEN, LYDIA JETT, NEIL MEHTA, BENJAMIN SUN, KEVIN WARSH, HARRY YOU, GOLDMAN SACHS & CO. LLC, ALLEN & COMPANY LLC, and J.P. MORGAN SECURITIES LLC, <br><br> Defendants. | Case No. 1:22-cv-07309-VSB |
| NAYA 1740 FUND LTD., NAYA COLDWATER FUND, NAYA MASTER FUND LP, NAYAWOOD LP, and QUANTUM PARTNERS LP, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> COUPANG, INC., BOM SUK KIM, GAURAV ANAND, MICHAEL PARKER, MATTHEW CHRISTENSEN, LYDIA JETT, NEIL MEHTA, BENJAMIN SUN, KEVIN WARSH, HARRY YOU, GOLDMAN SACHS & CO. LLC, ALLEN & COMPANY LLC, J.P. MORGAN SECURITIES LLC, CITIGROUP GLOBAL MARKETS INC., HSBC SECURITIES (USA), INC., DEUTSCHE BANK SECURITIES INC., UBS SECURITIES LLC, MIZUHO SECURITIES USA LLC, and CLSA LIMITED <br><br> Defendants. | Case No. 1:22-cv-08756-VSB |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## OF THE NEW YORK CITY PUBLIC PENSION FUNDS FOR CONSOLIDATION,
## APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 4

ARGUMENT ........................................................................................................................ 9

I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES.. 9

II.    THE NYC FUNDS SHOULD BE APPOINTED LEAD PLAINTIFF ............................ 11

    A.    The NYC Funds Are Willing to Serve as Class Representatives ......................... 12

    B.    The NYC Funds Have the "Largest Financial Interest" in the Related Actions ... 12

    C.    The NYC Funds Otherwise Satisfy the Requirements of Rule 23 ....................... 14

    D.    The NYC Funds Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses ............................................................. 19

III.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......... 19

CONCLUSION .................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
    2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018)..........................................................................15

*Bassin v. Decode Genetics, Inc.*,
    230 F.R.D. 313 (S.D.N.Y. 2005) .........................................................................................10

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
    141 F.R.D. 229 (2d Cir. 1992) ...........................................................................................15

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) .........................................................................................10

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
    2018 WL 3093965 (S.D.N.Y. June 21, 2018) ....................................................................13

*Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS),
    2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)......................................................................16

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) .........................................................................................16

*In re BP, PLC Sec. Litig.*,
    758 F. Supp. 2d 428 (S.D. Tex. 2010) ................................................................................14

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).................................................................................................13

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
    2007 WL 680779 (E.D.N.Y. Mar. 2, 2007).......................................................................13

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992).................................................................................................15

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
    2009 WL 2259502 (S.D.N.Y. July 29, 2009) ...............................................................10, 11

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ...........................................................................................20

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ....................................................................................13

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
 2008 WL 2811358 (S.D.N.Y. July 7, 2008) ............................................15

*In re Oxford Health Plans, Inc. Sec. Litig.*,
 182 F.R.D. 42 (S.D.N.Y. 1998) ............................................................15

*In re Petrobras Secs. Litig.*,
 104 F. Supp. 3d 618 (S.D.N.Y. 2015)....................................................18

*In re Pfizer Inc. Sec. Litig.*,
 233 F.R.D. 334 (S.D.N.Y. 2005) .......................................................3, 17

*In re Tronox, Inc. Sec. Litig.*,
 262 F.R.D. 338 (S.D.N.Y. 2009) ..........................................................10

*Janbay v. Canadian Solar, Inc.*,
 272 F.R.D. 113 (S.D.N.Y. 2010) ..........................................................15

*Johnson v. Celotex Corp.*,
 899 F.2d 1281 (2d Cir. 1990)................................................................10

*Kaplan v. Gelfond*,
 240 F.R.D. 88 (S.D.N.Y. 2007) ............................................................15

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
 311 F.R.D. 373 (S.D.N.Y. 2015) ..........................................................19

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ............................................13

*Malcolm v. Nat'l Gypsum Co.*,
 995 F.2d 346 (2d Cir. 1993)..................................................................10

*Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN),
 2015 WL 1367246 (S.D.N.Y. Apr. 5, 2016)..........................................14

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ........................................13

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. V. LaBranche & Co.*,
 229 F.R.D. 395 (S.D.N.Y. 2004) ..........................................................13

*Plumbers v. Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
 256 F.R.D. 620 (E.D. Wis. 2009) ..........................................................14

*Police & Fire Ret. Sys. Of City of Detroit v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC),
 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007)....................3, 17

*Randall v. Fifth St. Fin. Corp.*, No. 15-CV-7759(LANK),
　　2016 U.S. Dist. LEXIS 15719 (S.D.N.Y. Feb. 1, 2016) ................................................3, 17

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
　　589 F. Supp. 2d 388 (S.D.N.Y. 2008) .................................................................................19

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................ *passim*

15 U.S.C. § 77z-1 ......................................................................................................................1

15 U.S.C. § 77k ........................................................................................................................1

15 U.S.C. § 77o ........................................................................................................................1

PSLRA .............................................................................................................................. *passim*

**<u>Rules</u>**

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

Fed. R. Civ. P. 42 ..........................................................................................................1, 2, 10

The New York City Public Pension Funds (the "NYC Funds")[1] respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42"), Section 27(a)(3) of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(3), and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an Order: (1) consolidating the above-captioned actions (the "Related Actions"); (2) appointing the NYC Funds as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons and entities other than the above-captioned Defendants that purchased or otherwise acquired: (a) Coupang, Inc. ("Coupang" or the "Company") Class A common stock pursuant and/or traceable to the registration statement (the "Registration Statement") issued in connection with Coupang's March 2021 initial public offering (the "IPO"), and/or (b) Coupang securities between March 11, 2021 and July 12, 2022, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that the above-captioned Defendants issued a materially false and misleading registration statement to investors in connection with the IPO in violation of Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k, 77o) by misrepresenting Coupang's business and operations in the Registration Statement, and also defrauded Company investors by making materially false and/or misleading statements during the Class Period in violation of Section 10(b) of the Exchange Act. *See generally Choi v. Coupang, Inc. et al.*, 1:22-

---

[1] For purposes of this motion, the "NYC Funds" are the Teachers' Retirement System of the City of New York, the New York City Employees Retirement System, the New York City Police Pension Fund, the New York City Fire Department Pension Fund, the Board of Education Retirement System of the City of New York, the New York City Deferred Compensation Plan, and the Teachers' Retirement System of the City of New York Variable Annuity Program.

cv-07309-VSB, Dkt. No. 1 (the "*Choi* Complaint"); *Naya 1740 Fund Ltd. et al. v. Coupang, Inc. et al.*, 1:22-cv-08756-VSB, Dkt. No. 1 (the "*Naya* Complaint"). Coupang investors, including the NYC Funds, incurred significant losses as the truth about the Company's business and operations came to light, causing the value of Coupang stock to fall precipitously.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact. Here, the Related Actions are putative class actions, share common Defendants and allege violations of the federal securities laws arising from the same alleged wrongful misconduct. As such, the Related Actions involve common questions of both law ***and*** fact, and consolidation is plainly warranted.

The PSLRA instructs the Court to appoint the "most adequate plaintiff" of the class as Lead Plaintiff and further instructs the Court to adopt a presumption that the "most adequate plaintiff" of the Class is the movant or group of movants that possesses the largest financial interest in the outcome of the Related Actions and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. §§ 78u-4(a)(3)(B)(i)-(iii)(I). During the Class Period, the NYC Funds purchased 4,687,306 shares of Coupang stock, expended $125,664,776 on their purchases, retained 4,570,986 shares of Coupang stock at the end of the Class Period, and, as a result of the disclosure of the Defendants' malfeasance, incurred losses of approximately $41,281,450 in connection with their purchases of Coupang stock. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A. Accordingly, the NYC Funds believe that they have the largest financial interest in the relief sought in the Related Actions.

Beyond their considerable financial interest, the NYC Funds also meet the applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class. As sophisticated institutional

investors with significant financial interests in the litigation, and with significant experience gained from serving as lead plaintiff in numerous securities class actions, the NYC Funds are paradigmatic lead plaintiffs under the PSLRA, and their appointment would thus advance the legislative purpose of "increasing the role of institutional investors in class actions" in order to "benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at *34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733. For this reason, courts in this Judicial District strongly prefer appointment of institutional investors to lead complex securities class actions. *See*, *e.g.*, *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (appointing institutional investor as lead plaintiff, finding it to be "precisely the type of plaintiff envisioned under the PSLRA"); *Randall v. Fifth St. Fin. Corp.*, No. 15-CV-7759(LANK), 2016 U.S. Dist. LEXIS 15719, at *10 (S.D.N.Y. Feb. 1, 2016) (appointing institutional investor as lead plaintiff, expressly "bas[ing] its decision . . . on the congressional preference for institutional lead plaintiffs in private securities class actions."); *Police & Fire Ret. Sys. Of City of Detroit v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959, at *4 (S.D.N.Y. Feb. 21, 2007) (appointing institutional investor as lead plaintiff, noting Congress's intent to "encourag[e] institutional investors to serve as lead plaintiffs.").

To fulfill their obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, the NYC Funds have selected Pomerantz as Lead Counsel for the Class. Pomerantz is a nationally recognized securities class action firm that has recovered billions of dollars on behalf of investors, as detailed in its firm resume, and is well qualified to serve as Lead Counsel in this Action.

Accordingly, the NYC Funds respectfully request that the Court enter an order consolidating the Related Actions, appointing the NYC Funds as Lead Plaintiff for the Class and approving their selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaints in the Related Actions, Coupang is one of the largest e-commerce companies in Asia. Headquartered in Seoul, South Korea, the Company uses mobile applications and Internet websites to offer a wide range of products and services throughout the South Korean retail market, including home goods, apparel and beauty products, electronics, grocery and restaurant orders and deliveries, and content streaming. The Company has also stated that it is expanding into travel and financial services. While the Company's main operations are located predominantly in South Korea, it has operations and support services throughout China, Singapore, Japan, Taiwan, and the United States.

Founded in 2010, Coupang made a name for itself by commercializing South Korean quick-delivery services through aggressive investment in infrastructure technology and distribution centers. Growing to approximately 68,000 workers, Coupang has established approximately 100 fulfillment and logistics centers in over 30 cities. Coupang offers hundreds of millions of products, sourced from its owned-inventory and private-label branded products, third-party selections, and over 200,000 merchants for delivery within hours of customers placing online orders. Coupang also provides a "Rocket WOW" customer loyalty program to offer additional benefits to its most engaged and frequent customers. Due to its large footprint and quick delivery, Coupang is commonly referred to as the Amazon.com of South Korea.

Since inception and leading up to the IPO, Coupang experienced consistent revenue growth, securing its place as the largest player in the South Korean e-commerce market. The

Company's revenues tripled from $4 billion to over $11.9 billion, from year-ended December 31, 2018 to December 31, 2020. The Company's market share is estimated to have grown from approximately 7% of the market in 2018 to approximately 14% of the market in 2020.

Coupang operates in an intensely competitive e-commerce market where the recognition and reputation of its brand among its customers, merchants (the parties that sell their products on Coupang's marketplace), suppliers (manufacturers and distributors from whom it buys products), and workforce is paramount to the Company's continued growth and success. To that end, Coupang distinguishes itself from its competitors through—and its growth is dependent upon—its ability to provide lower prices on products for consumers, a better workplace environment for its workers, and significant opportunities for its suppliers and merchants, all of which the Company credits to its unique technology, competitive advantages, and expansive infrastructure.

Leading up to the IPO, Coupang's revenue grew rapidly as the COVID-19 pandemic (which began in early 2020) increased customers' preference for the conveniences of online shopping. Capitalizing on its recent growth, Coupang sought to conduct an IPO in the United States.

On February 12, 2021, Coupang filed with the U.S. Securities and Exchange Commission ("SEC") a registration statement for the IPO on Form S-1, which, after two amendments, was declared effective on March 10, 2021 (the "Registration Statement"). On March 11, 2021, Coupang filed with the SEC a prospectus for the IPO on Form 424B4, which incorporated and formed part of the Registration Statement. Pursuant to the Registration Statement, Coupang sold to the investing public 100 million shares of Coupang Class A common stock at $35 per share, for total gross proceeds of $3.5 billion. Coupang's IPO was the largest by a foreign company on Wall Street since China's Alibaba Group Holding Limited's IPO in 2014.

On or around April 27, 2021, less than two months after the IPO, *United Press International* reported on systemic, unsafe working conditions for Coupang's delivery drivers and employees at Coupang's fulfillment centers, noting that nine Coupang workers had died over the past year due to an inhumane working environment. The report further stated that the Committee for Coupang Workers' Human Rights and Health, created to improve the Company's workplace conditions, was pushing to form a labor union to force a safer work environment in response to poor conditions at the Company. The report quoted the co-chairman of the committee as stating: "'The management method of running a business at the expense of people's lives should not be tolerated for any reason. Humans are not machines.'" The report further emphasized Coupang's efforts to "muzzle media coverage" by suing journalists who had written about the Company's worker deaths.

On this news, Coupang's stock price fell $1.96 per share, or 4.3%, over the next two trading days, to close at $43.71 per share on April 28, 2021.

On June 17, 2021, a deadly and devastating fire broke out in the basement of the Company's Deokpyeong Logistics Fulfillment Center, located south of Seoul. The fire sparked outrage among the public in South Korea. Protestors claimed that the fire resulted from Coupang's imposition of inhumane working conditions. According to a statement issued by a transportation union under the Korean Confederation of Trade Unions, "[a]ctivation of sprinklers was delayed because they were shut off due to frequent malfunction." Thousands of users posted online claiming to have deleted their Coupang accounts under a hashtag that translated to "Leave Coupang." Many of the posts chastised the Company's poor working conditions and accused Coupang of overworking its employees in its warehouses. Opposition lawmaker Kim Yong-pan, a member of the Public Administration and Security Committee in the National Assembly, South

Korea's legislature, called the fire "a sad event that shows negligence of safety is still prevalent in our society."  Aside from consumer criticism, the fire cost Coupang approximately $296 million in lost inventory, property, equipment, and other costs.

On July 5, 2021, several news outlets, including the *Financial Times* in an article titled "Coupang faces probe over alleged manipulation of search algorithms," reported that Coupang was being investigated over "allegations it manipulated search algorithms to [prioritize] its own products over those of suppliers," by the Korea Fair Trade Commission ("KFTC").  Such manipulation not only exposed Coupang to regulatory consequences but threatened the merchant relationships on which Coupang relied by promoting Coupang's products at the expense of those sold by third-party sellers.

On this news, Coupang's stock price fell $0.51 per share, or 1.3%, to close at $39.95 per share on July 6, 2021.

On August 11, 2021, in its second quarter 2021 earnings release, Coupang reported a $518.6 million loss for the quarter, a fivefold increase from its loss in the second quarter of 2020. This outsized loss was due primarily to almost $300 million in inventory and equipment losses due to the June 2021 fire.

On this news, Coupang's stock price fell $3.07 per share, or 8.3%, to close at $34.13 per share on August 12, 2021.

On August 18, 2021, according to an article in *The Korea Times*, Coupang was sanctioned by the KFTC for forcing "hundreds of [third-party] sellers from early 2017 to September 2020 to comply with its unlawful sales and marketing policies to maintain its competitive edge over other online retailers amid the fierce battle for market dominance."  This included pressuring sellers to raise prices in goods sold at rival marketplaces "to ensure

that [Coupang] could offer those products at the cheapest prices," and coercing "suppliers to purchase ads." This both exposed Coupang to large regulatory liability and threatened to harm the merchant relationships.

On this news, Coupang's stock price fell $1.08 per share, or 3.4%, over the next two trading days, to close at $31.29 per share on August 20, 2021.

On September 10, 2021, a KFTC representative announced that Coupang was participating in, and would be regulated for, search algorithm manipulation that had improperly prioritized its own products over those of third-party sellers. This announcement signaled a significant expansion of the regulator's prior findings that Coupang had engaged in anticompetitive business practices with suppliers. While attending the "Fairness, Transparency and Competition Issues in Search Algorithms" conference at the European Chamber of Commerce in Korea, Vice Chairman of the KFTC Kim Jae-Shin specifically mentioned Coupang by name when attacking e-commerce businesses engaged in illicit business practices such as search algorithm manipulation and stated: "We will strictly respond to the act of adjusting and distorting the rules in order to give preference to their products and services by exploiting the dual status of platform operators as both referee and player."

On November 12, 2021, Coupang released its financial report for the third quarter of 2021, disclosing much higher than anticipated costs from the June 2021 fire, especially costs associated with labor and operations. During Coupang's earnings call for the third quarter of 2021 (the "Q3 2021 Earnings Call"), Coupang disclosed that the Company was having trouble hiring employees and that this difficulty was attributable in part to the June 2021 fire. The Company further disclosed that the fire had "lead to [] inefficiency in [Coupang's] network." Similarly, in

its related quarterly financial report, Coupang stated that the fire had reduced the Company's capacity.

On this news, Coupang's stock price fell $2.61 per share, or 8.9%, to close at $26.58 per share on November 12, 2021.

On March 22, 2022, *Korea JoonAng Dail*y reported that the KFTC had opened yet another investigation into Coupang. This time the KFTC was reportedly examining claims that Coupang had manipulated product reviews for its private-label branded products, sold through its Coupang Private Label Business ("CPLB") subsidiary, to make them appear more positive.

On July 13, 2022, *The Korea Times* issued an article entitled "Coupang, Naver Hit By Antitrust Allegations," which reported that Coupang was now also under investigation by the KFTC for falsely advertising the membership benefits of its Rocket WOW membership services.

On this news, Coupang's stock price fell $0.74 per share, or 5%, over the following two trading days, to close at $14.25 per share on July 14, 2022, representing a decline of more than 50% from the $35.00 per share IPO price.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the NYC Funds and other Class members have suffered significant losses and damages.

## ARGUMENT

## I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the

actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1-*3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. The Related Actions allege violations of the federal securities laws and share common Defendants. Accordingly, the Related Actions allege substantially the same wrongdoing—namely, that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of the Company's securities and subsequently damaged the Class when the Company's share price plummeted as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be

prejudiced); *GE*, 2009 WL 2259502, at *2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## II.  THE NYC FUNDS SHOULD BE APPOINTED LEAD PLAINTIFF

The NYC Funds believe that they are entitled to a presumption that they are the "most adequate plaintiff" of the Class within the meaning of the PSLRA and should be appointed Lead Plaintiff because, to their knowledge, they have the largest financial interest in the relief sought by the Class in the Related Actions and otherwise satisfy the requirements of Rule 23.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i)-(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the NYC Funds satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

**A.     The NYC Funds Are Willing to Serve as Class Representatives**

On August 26, 2022, counsel for the plaintiff in the first of the Related Actions to be filed caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that a securities class action had been filed against Defendants, and which advised investors in Coupang securities that they had until October 25, 2022—*i.e.*, 60 days from the date of the PSLRA Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Lieberman Decl., Ex. B.

The NYC Funds have filed the instant motion pursuant to the PSLRA Notice and have attached sworn Certifications executed on their behalf by Daniel R. Whitman, Senior Counsel of the New York City Law Department, attesting that the NYC Funds are willing to serve as representatives for the Class, and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C.

The NYC Funds are, in every respect, exactly the sort of well-managed, sophisticated institutional investors that Congress intended to fulfill the lead plaintiff role created by the PSLRA. With approximately $250 billion in assets under management as of July 2022, the NYC Funds are among the largest public pension plans in the U.S. Each pension fund is financially independent and accumulates the funds necessary to provide benefits to its members through contributions from members, participating employers, and investment earnings.

Accordingly, the NYC Funds satisfy the first requirement to serve as Lead Plaintiff of the Class.

**B.     The NYC Funds Have the "Largest Financial Interest" in the Related Actions**

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by

the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of their knowledge, the NYC Funds have the largest financial interest of any Coupang investor or investor group seeking to serve as Lead Plaintiff.  For claims arising under federal securities laws, courts frequently assess financial interest based upon the factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*, including, in relevant part: (1) the number of shares purchased; (2) the total net funds expended; (3) the net shares purchased (*i.e.*, shares retained); and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997).  In accord with other courts nationwide,[2] these *Lax* factors have been adopted and routinely applied by courts in this judicial district.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. V. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

As a threshold matter, the NYC Funds respectfully submit that for purposes of Lead Plaintiff appointment, financial interest should be assessed with reference only to the securities included in the Class definition in the first-filed *Choi* Complaint (Coupang Class A common stock (*Choi* Complaint ¶ 1)) rather than the broader pool of securities included in the Class definition in the later-filed *Naya* Complaint (all Coupang securities (*Naya* Complaint ¶ 2)).  The *Choi* Complaint was filed on October 14, 2022, just 11 days before the October 25, 2022 deadline to seek appointment as Lead Plaintiff in this litigation—*i.e.*, after more than 80% of the PSLRA's 60-day notice period had elapsed.  The NYC Funds respectfully submit that the timing of the *Naya*

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord. In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-*8 (E.D.N.Y. Mar. 2, 2007).

Complaint, with its more expansive Class definition, raises the possibility that counsel filed it purely as a mechanism to increase a client's losses for the purposes of Lead Plaintiff appointment, and that to accept the expanded Class definition for purposes of financial interest assessment thus risks rewarding attorney-driven gamesmanship. *See*, *e.g.*, *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2015 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016) (finding that the filing of a related complaint alleging an expanded class definition late in the PSLRA's 60-day notice period raised the "specter of gamesmanship"); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010) (noting that "blindly accepting" the most expansive class definition risks "manipulat[ion]" of the class definition to manufacture a larger financial interest); *Plumbers v. Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) ("simply adopting the most inclusive [class definition] might encourage . . . effort[s] to manipulate the lead plaintiff determination").

During the Class Period, the NYC Funds: (1) purchased 4,687,306 shares of Coupang stock; (2) expended $125,664,776 on their purchases; (3) retained 4,570,986 shares of Coupang stock at the end of the Class Period; and (4) incurred losses of approximately $41,281,450 in connection with their purchases of Coupang stock. *See* Lieberman Decl., Ex. A. To the extent that the NYC Funds possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C.    The NYC Funds Otherwise Satisfy the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 WL 1634872, at *3 ("[C]ourts need only consider the typicality and adequacy requirements.").

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

The NYC Funds' claims are typical of those of the Class. The NYC Funds allege, as do all Class members, that Defendants violated the Securities Act by issuing a materially false and/or misleading Registration Statement in connection with Coupang's IPO and violated the Exchange Act by making false and/or misleading statements during the Class Period. The NYC Funds, as did all Class members, purchased Coupang stock pursuant and/or traceable to the IPO or during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations and/or omissions that drove Coupang's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

The NYC Funds are a more than adequate representative for the Class. There is no evidence of antagonism or conflict between the NYC Funds' interests and the interests of the Class. Moreover, the NYC Funds have submitted signed Certifications attesting to their commitment to protecting the interests of the Class (*see* Lieberman Decl., Ex. C), and the significant losses incurred by the NYC Funds demonstrate that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Moreover, the NYC funds are sophisticated institutional investors with significant assets under management. As such, their appointment would be consistent with the PSLRA's preference for the appointment of institutional investors as class representatives in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). Indeed, courts in this Judicial District strongly prefer appointment of institutional investors to lead complex securities class actions. *See*, *e.g.*, *Pfizer*, 233 F.R.D. at 338 (appointing institutional investor as lead plaintiff, finding it to be "precisely the type of plaintiff envisioned under the PSLRA"); *Fifth St.*, 2016 U.S. Dist. LEXIS 15719, at *10 (appointing institutional investor as lead plaintiff, expressly "bas[ing] its decision . . . on the congressional preference for institutional lead plaintiffs in private securities class actions."); *SafeNet*, 2007 U.S. Dist. LEXIS 97959, at *4 (appointing institutional investor as lead plaintiff, noting Congress's intent to "encourag[e] institutional investors to serve as lead plaintiffs.").

The NYC Funds are especially well-positioned to oversee the prosecution of this class action. The NYC Funds will provide experienced and sophisticated oversight through dedicated lawyers in the New York City Law Department. Those lawyers will review and approve all significant pleadings before they are filed with the Court, will attend or be fully advised prior to any court appearances, settlement discussions or other important litigation events, and will regularly have meetings and conference calls with Pomerantz to discuss developments and strategy in the prosecution of this case.

The NYC Funds have processes and procedures in place expressly designed to oversee litigation to further the interests of the Class. Counsel for the NYC Funds retain a panel selected through an open request for proposal procedure consisting of many of the most experienced

plaintiff securities firms from which it solicits advice about participation and strategy for leading securities cases. It then solicits proposals from the firms in the panel to select the firm that offers the best litigation strategy and fee proposal. This second competitive mechanism promotes the best litigation path and ensures that the case is litigated in a cost-efficient manner that maximizes value for the Class.

This two-step process—which was undertaken in this case—results in the NYC Funds' retention of counsel highly experienced in prosecuting securities class actions vigorously and efficiently (and, as set forth *infra* at Section II, now timely submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v)). Pomerantz has agreed to limit the fees it would request should the litigation succeed, which will inure to the benefit of the Class. *See In re Petrobras Secs. Litig.*, 104 F. Supp. 3d 618, 624 (S.D.N.Y. 2015) (appointing institutional investor as lead plaintiff, finding that it "vetted its chosen counsel extensively and negotiated for a more favorable fee agreement" and was thus "far more likely to deliver the vigorous, investor-driven representation to which the class is entitled").

Indeed, the NYC Funds already have extensive experience serving as lead plaintiffs in prior securities class actions. The NYC Funds successfully prosecuted the class actions *In re Juniper Networks, Inc. Securities Litigation*, No. 3:06-cv-4327-MJJ (N.D. Cal.) ($169.5 million settlement), *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.) ("*Countrywide*") ($625 million settlement), and *In re Wachovia Equity Securities Litigation*, No. 08-cv-6161 (S.D.N.Y.) ($75 million settlement), among others. In the *Countrywide* litigation, the court expressed its "confidence in their ability to protect the interests of the class" and praised the NYC Funds as "obviously sophisticated." *Countrywide* Dkt. No. 1060 at 65-66. The NYC Funds also secured a $41 million settlement and the implementation of extensive corporate governance

reforms on behalf of shareholders of Wynn Resorts, Limited in the derivative litigation *DiNapoli v. Stephen A. Wynn*, No. A-18-770013-B (Nev. Dist. Ct.). The NYC Funds' successful track record in similar cases will obviously bring significant benefits to the Class in this Action.

All of these factors demonstrate that the NYC Funds' typicality and adequacy within the meaning of Rule 23(a) cannot reasonably be questioned.

### D.    The NYC Funds Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing the NYC Funds as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interests of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The NYC Funds' ability and desire to fairly and adequately represent the Class have been discussed above. The NYC Funds are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class. Accordingly, the NYC Funds should be appointed Lead Plaintiff for the Class.

## III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese*

*v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *see also*

*In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, the NYC Funds have selected Pomerantz as Lead Counsel for the Class. Pomerantz

is highly experienced in the areas of securities litigation and class actions and has successfully

prosecuted numerous securities litigations and securities fraud class actions on behalf of investors,

as detailed in its firm resume submitted herewith. *See* Lieberman Decl., Ex. D. In overview,

Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in

Chicago, Los Angeles, Paris, France, and Tel Aviv, Israel. *See id.* For more than 85 years,

Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras*

*Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3

billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class

action involving a foreign issuer and the fifth largest class action settlement ever achieved in the

United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz,

including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*,

No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf

of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million

settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised

in the instant Action, the NYC Funds' counsel, Pomerantz, has the skill, knowledge, expertise, and

experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus,

the Court may be assured that by approving the NYC Funds' selection of Pomerantz as Lead

Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the NYC Funds respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the NYC Funds as Lead Plaintiff for the Class; and (3) approving the NYC Funds' selection of Pomerantz as Lead Counsel for the Class.

Dated:  October 25, 2022

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
Emma Gilmore
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
egilmore@pomlaw.com
ahood@pomlaw.com

*Counsel for the New York City Public Pension Funds and Proposed Lead Counsel for the Class*